UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 26 C 208 |
| MARVIN WAYNE JACKSON, | ) ) ) |
| Defendant. | ) |

**COMPLAINT**

The United States of America, for itself and on behalf of its agency, the Federal Aviation Administration, by Andrew S. Boutros, United States Attorney for the Northern District of Illinois, for its complaint against defendant Marvin Wayne Jackson, alleges as follows:

**Introduction**

1. This action is brought by the United States of America to recover civil penalties in the sum of $61,711 from defendant Marvin Wayne Jackson under 49 U.S.C. § 46301(a)(5)(A).

2. Chicago resident Marvin Wayne Jackson owns and operates small, unmanned aircraft systems, commonly known as "drones." Jackson also owns and operates a drone business named "Mr. Bojack's Drone Tech" (mrbojacksdronetech.com/). To promote his business, Jackson has operated unauthorized small unmanned aircraft systems ("sUASs") over people and traffic in the city of Chicago, in inclement weather, at night, close to buildings, and in violation of numerous FAA regulations designed to keep people and property safe. Jackson has filmed these flights and posted them to his social media accounts (TikTok, YouTube, and Facebook). Jackson has repeatedly flown his sUASs without a remote pilot certificate, in violation of multiple regulations, and under unsafe circumstances. On at least one occasion, the FAA warned him, counseled and educated him, and spoke with him about his improper sUAS operations. In defiance of the

applicable regulations and the warning he received, Jackson persists in operating his sUASs in a dangerous and unacceptable manner throughout Chicago. The United States brings this action to enforce the safety regulations that Jackson continues to knowingly violate.

## Jurisdiction and Venue

3. This court has subject matter jurisdiction over this action under 49 U.S.C. §§ 46301(d)(4) and 46305 and 28 U.S.C. § 1345.

4. Venue is proper in this district under 49 U.S.C. § 46106 and 28 U.S.C. §§ 1391(b) and 1395 because the defendant can be found in, resides in, has transacted business in, and/or a substantial part of the events or omissions giving rise to this claim is in this district.

## Parties

5. Plaintiff is the United States of America on behalf of its agencies, including the Federal Aviation Administration

6. Defendant is Marvin Wayne Jackson, an individual residing in Chicago, Illinois, and also operating sUASs in Chicago. Jackson frequently posts images of himself operating these systems on social media. For illustrative purposes, screen shots from two posted YouTube videos are shown below.



https://www.youtube.com/watch?v=mh3fwKu7Kg0

https://www.youtube.com/watch?v=NVZ8WbZLTxY

**Facts**

**I.     FAA Statutory Framework for Small Unmanned Aircraft Systems**

7.     In the FAA Modernization and Reform Act of 2012 (the "Act"), Congress directed the FAA to develop "a comprehensive plan to safely accelerate the integration of civil unmanned aircraft systems into the national airspace system." FAA Modernization and Reform Act of 2012, Pub. L. No. 112–95, § 332, 126 Stat. 11, 73 (2012).

8.     Under this directive, the FAA promulgated 14 C.F.R. part 107 ("Part 107"), which "applies to the registration, airman certification, and operation of civil small, unmanned aircraft systems within the United States." 14 C.F.R. § 107.1(a). Part 107 is the primary regulation for flying sUASs, and it allows for sUASs to be flown for a variety of purposes, including work, business, education, and public safety. The FAA's regulations set forth in Part 107 are designed to keep people and property safe.

9.     For example, Part 107 sets forth the standards of who may be qualified to fly a sUAS. Specifically, 14 C.F.R. § 107.12(a) states, that except as provided in 14 C.F.R. § 107.12(c), no person may manipulate the flight controls of a sUAS unless (1) that person has a remote pilot certificate with a small aircraft rating issued pursuant to 14 C.F.R. part 107, subpart C, and satisfies the requirements of 14 C.F.R. § 107.65 or (2) that person is under the direct supervision of a remote pilot in command and the remote pilot in command has the ability to immediately take direct control of the flight of the sUAS.

10.    And 14 C.F.R. § 107.12(b) states that, except as provided in 14 C.F.R. § 107.12(c), no person may act as a remote pilot in command unless that person has a remote pilot certificate with a small-unmanned-aircraft-system rating issued pursuant to 14 C.F.R. part 107, subpart C, and satisfies the requirements of 14 C.F.R. § 107.65. Further, 14 C.F.R. § 107.65 states that a

person may not exercise the privileges of a remote pilot in command with small-unmanned-aircraft-system rating unless that person has accomplished one of the following in a manner acceptable to the Administrator within the previous 24 calendar months: (a) passed an initial aeronautical knowledge test covering the areas of knowledge specified in 14 C.F.R. § 107.73; (b) completed recurrent training covering the areas of knowledge specified in 14 C.F.R. § 107.73; or, (c) if a person holds a pilot certificate (other than a student pilot certificate) issued under 14 C.F.R. part 61 and meets the flight review requirements specified in 14 C.F.R. § 61.56, completed training covering the areas of knowledge specified in 14 C.F.R. § 107.74.  Section 107.65(d) provides that a person who has passed a recurrent aeronautical knowledge test in a manner acceptable to the Administrator or who has satisfied the training requirement of 14 C.F.R. § 107.65(c) prior to April 6, 2021, within the previous 24 calendar months is considered to be in compliance with the requirement of 14 C.F.R. § 107.65(b) or (c), as applicable.

11. Part 107 also sets forth what the remote pilot of a sUAS must do prior to flight. Specifically, 14 C.F.R. § 107.19(c) states that the remote pilot in command must ensure that the sUAS will pose no undue hazard to other people, other aircraft, or other property in the event of a loss of control of the sUAS for any reason.  Next, 14 C.F.R. § 107.19(d) states that the remote pilot in command must ensure that the sUAS operation complies with all applicable regulations of 14 C.F.R. chapter I, which includes Part 107.

12. Further, 14 C.F.R. § 107.49(a) states that, prior to flight, the remote pilot in command must assess the operating environment, considering risks to persons and property in the immediate vicinity both on the surface and in the air. This assessment must include (1) local weather conditions, (2) local airspace and any flight restrictions, (3) the location of persons and property on the surface, and (4) other ground hazards.

13. Part 107 also places restrictions on when, how, in what manner, and where a remote pilot may fly a sUAS. For example, 14 C.F.R. § 107.23(a) states that no person may operate a sUAS in a careless or reckless manner so as to endanger the life or property of another.

14. And 14 C.F.R. § 107.29(a) states that, except as provided in 14 C.F.R. § 107.29(d), no person may operate a sUAS at night unless (1) the remote pilot in command of the sUAS has completed an initial knowledge test or training, as applicable, under 14 C.F.R. § 107.65 after April 6, 2021, and (2) the sUAS has lighted anti-collision lighting visible for at least 3 statute miles that has a flash rate sufficient to avoid a collision. The remote pilot in command may reduce the intensity of, but may not extinguish, the anti-collision lighting if he or she determines that, because of operating conditions, it would be in the interest of safety to do so.

15. Next, 14 C.F.R. § 107.31(a) states that with vision that is unaided by any device other than corrective lenses, the remote pilot in command, the visual observer (if one is used), and the person manipulating the flight control of the sUAS must be able to see the unmanned aircraft throughout the entire flight in order to (1) know the unmanned aircraft's location; (2) determine the unmanned aircraft's attitude, altitude, and direction of flight; (3) observe the airspace for other air traffic or hazards; and (4) determine that the unmanned aircraft does not endanger the life or property of another.

16. As for the operation of sUAS over humans, 14 C.F.R. § 107.39 states that no person may operate a sUAS over a human being unless (a) that human being is directly participating in the operation of the sUAS; (b) that human being is located under a covered structure or inside a stationary vehicle that can provide reasonable protection from a falling sUAS; or (c) the operation meets the requirements of at least one of the operational categories specified in 14 C.F.R. part 107, subpart D.

17. Similarly, 14 C.F.R. § 107.145(b) states that no person may operate a sUAS over a human being located inside a moving vehicle unless the following conditions are met: for an operation under Category 1, Category 2, or Category 3, the sUAS, throughout the operation (1) must remain within or over a closed- or restricted-access site, and all human beings located inside a moving vehicle within the closed- or restricted-access site must be on notice that a sUAS may fly over them, or (2) must not maintain sustained flight over moving vehicles.

18. When a sUAS is in flight, 14 C.F.R. § 107.51(b) states that the remote pilot in command and the person manipulating the flight controls of the sUAS must comply with all of the following operating limitations when operating a sUAS: The altitude of the sUAS cannot be higher than 400 feet above ground level, unless the sUAS (1) is flown within a 400-foot radius of a structure, and (2) does not fly higher than 400 feet above the structure's immediate uppermost limit.

## II. Jackson's Flights Violated FAA Regulations

19. Jackson flies his drones for a commercial purpose. Specifically, Jackson operates Mr. Bojack's Drone Tech, which sells drones and drone accessories. Jackson promotes his business by posting videos on social media of him flying his drones. Jackson's videos also include his website (www.mrbojacksdronetech.com) and include promotional language such as "my reviews speak for themselves."

20. Jackson has not been issued a remote-pilot certificate with a small-unmanned-aircraft-system rating by the FAA.

21. Jackson has not:

   a. passed an initial aeronautical knowledge test covering the areas of knowledge specified in 14 C.F.R. § 107.73;

7

    b. completed recurrent training covering the areas of knowledge specified in 14 C.F.R. § 107.73; or

    c. completed training covering the areas of knowledge specified in 14 C.F.R. § 107.74.

22. Jackson operated a sUAS on or about the following dates:

    a. August 18, 2021;

    b. November 23, 2021;

    c. December 15, 2021;

    d. December 17, 2021;

    e. December 21, 2021;

    f. December 28, 2021;

    g. January 28, 2022;

    h. February 1, 2022;

    i. February 2, 2022;

    j. April 4, 2022;

    k. May 17, 2023;

    l. May 23, 2023;

    m. November 25, 2023;

    n. January 8, 2024;

    o. January 31, 2024; and

    p. April 16, 2024

23. Jackson operated a sUAS not under the direct supervision of a remote pilot in command on or about the 16 dates listed in paragraph 22.

24. Jackson operated a sUAS without an effective U.S. registration certificate on or about the 16 dates listed in paragraph 22.

25. Jackson operated a sUAS without ensuring that the system posed no undue hazard to other people, other aircraft, or other property in the event of a loss of control of the sUAS for any reason on or about the 16 dates listed in paragraph 22.

26. Jackson operated a sUAS without ensuring that the operation of the system complied with all applicable regulations of 14 C.F.R. chapter I on or about the 16 dates listed in paragraph 22.

27. Jackson operated a sUAS in a careless or reckless manner so as to endanger the life or property of another on or about the 16 dates listed in paragraph 22.

28. Jackson operated a sUAS without being able to see the unmanned aircraft throughout the entire flight with vision that was unaided by any device other than corrective lenses on or about the 16 dates listed in paragraph 22.

29. Jackson operated a sUAS over a human being on or about the 16 dates listed in paragraph 22. During these flights:

   a. the human beings were not directly participating in the operation of the sUAS;

   b. the human beings were not located under covered structures or inside stationary vehicles that can provide reasonable protection from a falling sUAS; and

   c. the operations did not meet the requirements of at least one of the operational categories specified in 14 C.F.R. part 107, subpart D.

30. Jackson operated a sUAS without, prior to flight, assessing the operating environment, considering risks to persons and property in the immediate vicinity both on the

surface and in the air on or about the 16 dates listed in paragraph 22. Further, prior to these flights, Jackson did not assess:

      a. local weather conditions,

      b. local airspace and any flight restrictions,

      c. the location of persons and property on the surface, or

      d. other ground hazards.

31. Jackson posted many of the flights that occurred in inclement weather (snow) on his social media accounts. For example:



32. Jackson operated a sUAS over a human being located inside a moving vehicle on or about the 16 dates listed in paragraph 22. During these flights:

   a. the human beings did not remain within or over a closed- or restricted-access site,

   b. the human beings were not on notice that a sUAS may fly over them, and

   c. Jackson maintained sustained flight over moving vehicles.

33. Jackson posted flights that occurred over people and moving vehicles, including at least twice of the Chicago Police Department vehicle, on his social media accounts. For example:



34. Jackson operated a sUAS at night on or about the following dates:

   a. August 18, 2021;

   b. November 23, 2021;

11

      c.   December 15, 2021;

      d.   December 17, 2021;

      e.   December 21, 2021;

      f.   December 28, 2021; and

      g.   February 2, 2022.

35.    Jackson posted these flights that occurred at night on his social media accounts. For example:





36. Jackson operated a sUAS higher than 400 feet above ground level, but not within a 400-foot radius of a structure, on or about the following dates:

    a. August 18, 2021;

    b. November 23, 2021;

    c. December 15, 2021;

    d. December 17, 2021;

    e. December 21, 2021;

    f. December 28, 2021;

    g. January 28, 2022; and

    h. April 4, 2022.

      i. May 17, 2023;

      j. May 23, 2023;

      k. January 8, 2024;

      l. January 31, 2024; and

      m. April 16, 2024

### Count I: Civil Penalties Under 49 U.S.C. § 46301(a)(5)(A)

37. The United States incorporates by this reference the allegations of paragraphs 1 through 36, above, as though set forth in full.

38. Jackson violated 14 C.F.R. §§ 107.12(a), 107.12(b), 107.13, 107.19(c), 107.19(d), 107.23(a), 107.31(a), 107.39, 107.49(a), 107.65, and 107.145(b) when he flew his sUAS on or about the dates listed in paragraph 22.

39. Jackson violated 14 C.F.R. § 107.29(a) when he flew his sUAS on or about the dates listed in paragraph 34.

40. Jackson violated 14 C.F.R. § 107.51(b) when he flew his sUAS on or about the dates listed in paragraph 36.

41. Pursuant to 49 U.S.C. § 46301(a)(5)(A), Jackson is subject to a civil penalty not to exceed $14,074 for each violation of the Federal Aviation Regulations before March 21, 2022, and $14,950 for each violation of the Federal Aviation Regulations on or after March 21, 2022. Under 49 U.S.C. § 46301(a)(2), a separate violation occurs for each flight involving the violation.

WHEREFORE, the United States requests that judgment be entered in its favor, as follows:

a. judgment for the United States against defendant Marvin Wayne Jackson in the sum of $61,711;

b. for an award of costs and interest from the date of entry of judgment; and

c. for such further relief as is proper.

    Respectfully submitted,

    ANDREW S. BOUTROS
    United States Attorney

    By: s/ Paraisia Winston
        PARAISIA WINSTON
        Assistant United States Attorney
        219 South Dearborn Street
        Chicago, Illinois 60604
        (312) 469-6008
        paraisia.winston@usdoj.gov